UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| KEVIN LEE HILL, <br><br> Plaintiff, <br><br> v. <br><br> GALIPEAU, et al., <br><br> Defendants. | CAUSE NO. 3:21-CV-603-JD-MGG |

OPINION AND ORDER

Kevin Lee Hill, a prisoner without a lawyer, filed an amended complaint. ECF 27. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, under 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

Hill alleges he repeatedly consumed mouse droppings in his food at the Westville Correctional Facility (WCF) between November 2020 and April 2021.[1] During

---

[1] He has since been transferred out of WCF and into the care of Allen County Residential Services. *See* ECF 28. Therefore, any possible injunctive relief claims against the Warden have been rendered moot. *See Higgason v. Farley*, 83 F.3d 807, 811 (7th Cir. 1996) ("If a prisoner is transferred to another prison, his request for injunctive relief against officials of the first prison is moot unless he can demonstrate that he is likely to be retransferred.").

that time, Hill worked as a dishwasher for Aramark Correctional Services, LLC, the meal provider at WCF, and witnessed mice everywhere in the kitchen and droppings all over the food. He claims the refrigerator where food was stored was like a "mouse zoo." ECF 27 at 2. Hill alleges Jason English, a kitchen supervisor at Aramark, personally knew of the infestation because he spoke to other workers about replacing the refrigerator due to "mice chewing their way in." *Id*. at 3. English reportedly failed to fix the issue and continued to serve food to inmates on trays that were dirty and had obvious mouse droppings all over them. Hill wrote grievances about the issue, but nothing was done. He claims ingesting the droppings caused him to have stomach pains, diarrhea, and headaches.

Hill has sued Aramark, Warden Galipeau, and the Commissioner of the Indiana Department of Correction for monetary damages and injunctive relief.[2] Additionally, although he is not listed in the caption, the body of the complaint makes it clear Hill intends to sue English, so the clerk will be directed to add him as a defendant. *See id*. at 3.

---

[2] It is not clear from the phrasing of the caption whether Hill is suing the "Indiana Department of Correction" *and* the "I.D.O.C. Commissioner and Operator of Westville Correctional Facility" or whether he is just intending to sue the Commissioner. *See* ECF 27 at 1. Either way, he cannot maintain a claim for monetary damages against the Indiana Department of Correction itself or any of its employees in their official capacities. *See de Lima Silva v. Dept. of Corrections*, 917 F.3d 546, 565 (7th Cir. 2019) ("The Eleventh Amendment bars private litigants' suits against nonconsenting states in federal courts, with the exception of causes of action where Congress has abrogated the states' traditional immunity through its powers under the Fourteenth Amendment. This immunity extends to state agencies and state officials in their official capacities. There is no dispute that the DOC is a nonconsenting state agency, and Congress has not abrogated [Indiana's] Eleventh Amendment immunity for plaintiff's claims brought pursuant to § 1983.") (internal quotation marks and citations omitted).

Inmates are entitled to conditions of confinement that meet "the minimal civilized measure of life's necessities." *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008) (citations omitted). In evaluating an Eighth Amendment claim, courts conduct both an objective and a subjective inquiry. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The objective prong asks whether the alleged deprivation is "sufficiently serious" that the action or inaction of a prison official leads to "the denial of the minimal civilized measure of life's necessities." *Id.* (citations omitted). On the subjective prong, the prisoner must show the defendant acted with deliberate indifference to the inmate's health or safety. *Farmer*, 511 U.S. at 834. As the Seventh Circuit has explained:

> [C]onduct is deliberately indifferent when the official has acted in an intentional or criminally reckless manner, i.e., the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so.

*Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005) (internal citations and quotation marks omitted). Put another way, an inmate can state a viable claim for deliberate indifference to a hazardous condition of confinement if he alleges the defendant "deliberately ignored a prison condition that presented an objectively, sufficiently serious risk of harm." *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014) (citation omitted).

Here, Hill alleges English deliberately ignored the mouse infestation in the kitchen and intentionally served him contaminated food that made him ill for a period of six months. Giving him the benefit of the inferences to which he is entitled, Hill has stated a plausible Eighth Amendment claim against English. *See Smith v. Dart*, 803 F.3d

304, 312 (7th Cir. 2015) ("The Constitution mandates that prison officials provide inmates with nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well-being of the inmates who consume it.") (internal quotation marks and citation omitted); *Byrd v. Hobart*, 761 Fed. Appx. 621, 624 (7th Cir. 2019) ("[W]here inmates have observed mice droppings, mice, and cockroaches literally in and on the food, a reasonable jury could conclude that the risk of harm to [the plaintiff] (who eats this food daily) is both substantial and obvious.").

Hill has also sued Aramark. A private company performing a public function can be sued under 42 U.S.C. § 1983 for constitutional violations as described in *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). However, such entities cannot be held liable for the unconstitutional acts of their employees unless the plaintiff shows "the violation was caused by (1) an express government policy; (2) a widespread and persistent practice that amounted to a custom approaching the force of law; or (3) an official with final policymaking authority." *Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 653 (7th Cir. 2021); *see also Grieveson v. Anderson*, 538 F.3d 763, 771 (7th Cir. 2008). The purpose of this requirement is to "distinguish between the isolated wrongdoing of one or a few rogue employees and other, more widespread practices." *Howell*, 987 F.3d at 654 (7th Cir. 2021); *see also Gill v. City of Milwaukee*, 850 F.3d 335, 344 (7th Cir. 2017) ("At the pleading stage . . . a plaintiff pursuing [a *Monell*] theory must allege facts that permit the reasonable inference that the practice is so widespread so as to constitute a governmental custom.").

Here, Hill doesn't specifically define any official policy or custom of Aramark. He alleges English was aware of the mouse infestation and did nothing to remedy it, but the actions (or inaction) of a single kitchen supervisor isn't sufficient to plausibly support a claim that Aramark had a policy, practice, or custom that acted as the moving force behind his constitutional injury, so this corporate defendant will be dismissed. *See Dixon v. Cty. of Cook*, 819 F.3d 343, 348 (7th Cir. 2016) (*Monell* requires a plaintiff to show that an official policy or custom "was the 'moving force' behind his constitutional injury").

As to the IDOC defendants, Hill alleges he filed grievances and medical requests related to the kitchen infestation and contaminated food, but he doesn't plausibly allege either the Warden or the Commissioner were personally aware of the situation. *See J.K.J. v. Polk Cty.*, 960 F.3d 367, 377 (7th Cir. 2020) (officials cannot be held liable simply because they hold supervisory positions at the prison); *see also Mitchell v. Kallas*, 895 F.3d 492, 498 (7th Cir. 2018) and *Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009) (both noting that liability under 42 U.S.C. § 1983 is based on personal responsibility, and supervisory defendants cannot be held liable for the misdeeds of other prison staff). Hill also claims he saw mice in his dorm on the first day he arrived which "got into [his] locker box and ate food I had placed in there leaving behind feces" (ECF 27 at 4), but these sparse allegations are insufficient to impute knowledge or liability to the supervisory defendants or to create a standalone claim related to an infestation in his cell. *See e.g Mitchell*, 895 F.3d at 498; *see also Smith*, 803 F.3d at 312 ("[A]lthough he alleged that mice and cockroaches are present in the jail, he did not allege facts from

5

which one could infer that the degree of infestation rose to the level of constitutional concern").

Hill also alleges various other conditions at WCF were problematic. He noticed the water provided for drinking and showering was "brown at times even yellow and a reddish color." ECF 27 at 4. He described the water as "tast[ing] like rust." *Id.*[3] He claims the "facility employees" knew of the issue, so they brought in or were provided with bottled water. He alleges the general dorm area where he was placed in June 2021 was overcrowded. Seventy inmates shared three working toilets and two working showers. He alleges there was often a line to use the bathroom, and thirty inmates at a time had to wait to shower, which caused "anxiety and frustration." ECF 27 at 5. There was a "lack of staff," so the guards "overused their authority towards inmates." *Id*. He personally got into arguments with staff over the situation and was "frustrated in general." *Id*. He also alleges there was asbestos hanging from lead pipes with "caution tape" on them in the basement where he "sometimes" went for work. *Id*. at 6–7. He claims there was lead paint on the walls and black mold in the showers. This caused him to cough and sneeze "continually for about 6 days" sometime between June–July 2021. He wrote to medical and was told to order medication from commissary to relieve his symptoms.

---

[3] He states he "*believe[s]*" the water contains "microbiotic, inorganic, radioactive contaminants also pesticides and herbicides as well as chemicals." ECF 27 at 4 (emphasis added). However, Hill's personal beliefs—without supporting facts—are speculative and cannot provide the basis for a plausible claim. *See Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir. 2010) ("[A] plaintiff must do better than putting a few words on paper that, in the hands of an imaginative reader, *might* suggest that something has happened to her that *might* be redressed by the law.") (emphasis in original).

Even if these conditions were serious enough to violate the Eighth Amendment, Hill hasn't plausibly alleged any of the named defendants were personally aware of these issues, so he hasn't stated claims against them. *See J.K.J.*, 960 F.3d at 377; *Mitchell*, 895 F.3d at 498; *Burks v. Raemisch*, 555 F.3d at 596. Moreover, as to the brown, red, and/or yellow colored water, "[t]here are no recognized side effects of drinking rusty water" [and] "no enforceable federal limits on the amount of rust in drinking water." *See* https://www.reference.com/world-view/side-effects-drinking-rusty-water-728e5297a7bda2ed (last visited Nov. 7, 2022); *see also* https://www.usgs.gov/faqs/what-can-be-causing-our-drinking-water-have-reddish-color (last visited Nov. 7, 2022) ("Iron tends to add a rusty, reddish-brown (or sometimes yellow) color to water. If the color is more black than red, your water might contain a combination of iron and manganese. Both of these metals can cause staining of plumbing fixtures or laundry, but they are not known to cause health problems."). And, as the Seventh Circuit has noted:

> [p]oisoning the prison water supply or deliberately inducing cancer in a prisoner would be forms of cruel and unusual punishment . . .. But failing to provide a maximally safe environment, one completely free from pollution or safety hazards, is not. . . . The Eighth Amendment does not require prisons to provide prisoners with more salubrious air, healthier food, or cleaner water than are enjoyed by substantial numbers of free Americans.

*Carroll v. DeTella*, 255 F.3d 470, 472 (7th Cir. 2001) (citations omitted). Regarding the overcrowding and shower/toilet situation, Hill alleges he had to wait in line to use the bathroom or shower, which caused him anxiety and frustration and led to arguments with staff and the other inmates. He does not, however, allege he was deprived of using

7

the facilities entirely—or even for a prolonged period of time—or that he suffered a physical injury because of the conditions. These sparse allegations are insufficient to state a valid Eighth Amendment claim. *See e.g. McCree v. Sherrod*, 408 Fed. Appx. 990, 992 (7th Cir. 2011) (plaintiff subjected to triple-celling and overcrowding failed to adequately plead the conditions deprived him of "life's minimal necessities" because "prison life was often uncomfortable by necessity" and "routine discomfort is part of the penalty that [prisoners] pay for their offenses against society") (internal quotation marks and citations omitted). The same is true of his allegations regarding asbestos, mold, and/or lead paint.  Hill alleges he saw asbestos in the basement where he "sometimes" went for work and that there was lead paint and mold on the walls in the prison in general. These sparse allegations are insufficient to state a claim. *See e.g. Jelinek v. Roth*, 33 F.3d 56 (7th Cir. 1994) ("The mere presence of asbestos, however, does not amount to an Eighth Amendment violation. . . . Although in drawing all reasonable inferences in [plaintiff's] favor we can infer that [he] may have been forced to inhale some asbestos, he does not allege that the asbestos was present in any unreasonable or excessive amounts.").

Finally, Hill alleges many of his grievance forms were thrown away or destroyed by staff members. He believes having a three-page grievance form—with white, yellow, and pink copies—would alleviate some of the issues with the grievance process. However, "[p]rison grievance procedures are not mandated by the First Amendment and do not by their very existence create interests protected by the Due Process Clause .

. . ." *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011). Allegations about deficiencies in the grievance process do not state a claim.

For these reasons, the court:

(1) DIRECTS the clerk to add Jason English, a Kitchen Supervisor for Aramark, Inc. a/k/a Aramark Correctional Services, LLC, as a defendant;

(2) GRANTS Kevin Lee Hill leave to proceed against Jason English in his individual capacity for compensatory and punitive damages for deliberately ignoring the mouse infestation in the kitchen area at the Westville Correctional Facility and intentionally serving him contaminated food that made him ill from November 2020 to April 2021 in violation of the Eighth Amendment;

(3) DISMISSES all other claims;

(4) DISMISSES John Galipeau, Aramark, Inc. a/k/a Aramark Correctional Services, LLC, the Indiana Department of Corrections, and/or the I.D.O.C. Commissioner and Operator of Westville Correctional Facility;

(5) DIRECTS the clerk, under 28 U.S.C. § 1915(d), to request Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Jason English at the Indiana Department of Correction, with a copy of this order and the complaint (ECF 27);

(6) ORDERS the Indiana Department of Correction and/or Aramark, Inc. a/k/a Aramark Correctional Services, LLC, to provide the full name, date of birth, and last known home address of any defendant who does not waive service if it has such information; and

(7) ORDERS, under 42 U.S.C. § 1997e(g)(2), Jason English to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED on November 8, 2022

/s/JON E. DEGUILIO
CHIEF JUDGE
UNITED STATES DISTRICT COURT